**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MISTY GAYLE HART-BEVAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:21-cv-145-ALM-KPJ** |
| | § | |
| **KILOLO KIJAKAZI,**[1] | § | |
| ***Acting Commissioner of Social Security,*** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Misty Gayle Hart-Bevan ("Ms. Hart-Bevan") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I.    APPLICABLE LAW

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. *See* FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.    **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotations omitted).

## II.  BACKGROUND AND PROCEDURAL HISTORY

Ms. Hart-Bevan was born in 1977, completed an associate's degree in dental hygiene, and worked as a pediatric dental hygienist until she stopped working in June 2013.[4] *See* Tr. 307, 739, 745, 803–04, 810, 1256. On November 21, 2013, Ms. Hart-Bevan filed an application for Disability Insurance Benefits ("DIB"), alleging disability since August 20, 2013, due to ". . . brain trauma, future procedures, pain . . .; auto accident; broken bones; dizziness, ringing in ears; depression; severe stomach problems after surgery, ulcer, gastritis; [and] neck pain/whiplash." *See* Tr. 204, 292–93. The Social Security Administration ("SSA") denied Ms. Hart-Bevan's claim initially on February 3, 2014, and upon reconsideration on April 16, 2014. *See* Tr. 222–25, 229–31. Thereafter, Ms. Hart-Bevan filed a written request for a hearing. *See* Tr. 232–33. On May 14, 2015, Administrative Law Judge Donald R. Davis ("ALJ Davis") held a hearing.[5] *See* Tr. 1216–37. ALJ Davis issued an unfavorable decision on July 2, 2015. *See* Tr. 149–66. Ms. Hart-Bevan requested review by the Appeals Council, which denied her request. *See* Tr. 878–85, 939–41.

Ms. Hart-Bevan then filed her first appeal to this Court on January 17, 2017. *See Hart-Bevan v. Comm'r, SSA*, No. 4:17-cv-117, Dkt. 1 (E.D. Tex. Jan. 17, 2017). On September 21, 2017, the Court granted the Commissioner's unopposed motion to remand.[6] *See id.* Dkt. 23 ; *see also* Tr. 890–91.

---

[4] Documents 10-1 through 10-24 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] ALJ Davis initially held a hearing on January 5, 2015. *See* Tr. 167–81. That hearing was continued until May 2015 so that Ms. Hart-Bevan could seek representation. *Id.* At the May 2015 hearing, Ms. Hart-Bevan appeared without a representative and informed the ALJ that she was proceeding without representation. *See* Tr. 182–202.

[6] While her first appeal was pending, Ms. Hart-Bevan filed a second application for DIB in April 2017, alleging disability since August 20, 2013, due to "bipolar disorder . . .; vertigo; stomach issues; pain in neck, shoulders, back; numbness, tingling bilaterally; tinnitus; chronic fatigue; memory and concentration issues; and PTSD-trauma related." *See* Tr. 1182–86, 893–95. After the Court remanded Ms. Hart-Bevan's case, the Appeals Council directed the ALJ to "consolidate [both] claims files, associate the evidence, and issue a new decision on the consolidated claims." *See* Tr. 936.

On remand, the Appeals Council remanded the case to Administrative Law Judge Jana Kinkade (the "ALJ") for a new hearing. *See* Tr. 935–36. On May 21, 2019, the ALJ held a hearing at which Ms. Hart-Bevan, her attorney, and a vocational expert appeared. *See* Tr. 768–838. In addition, two subpoenaed consultative medical examiners, Dr. Nicole Bereolos, Ph.D., and Dr. Mohamed Shabana, M.D., testified at the hearing. *Id.* The ALJ held a supplemental hearing on September 9, 2019, at which an impartial medical expert, Dr. Ali Ashraf, M.D., testified. *See* Tr. 1174–81. The ALJ held a second supplemental hearing on February 11, 2020, at which an impartial medical expert, Dr. Randall Rattan, Ph.D., and an impartial vocational expert, Calvin Turner, testified. *See* Tr. 840–59.

On March 24, 2020, the ALJ issued an unfavorable decision denying Ms. Hart-Bevan's claim. *See* Tr. 734–47. In her decision, the ALJ found that Ms. Hart-Bevan met the insured status requirements of the Social Security Act (the "Act") through September 30, 2018. *See* Tr. 736. At step one, the ALJ found that Ms. Hart-Bevan had not engaged in substantial gainful activity since August 20, 2013, her alleged onset date, through her date last insured of September 30, 2018. *See* Tr. 737. At step two, the ALJ found that Ms. Hart-Bevan had the following severe impairments: status post motor vehicle collision with facial injury requiring orbital implant/surgical repair, scapular fracture, right fibular head fracture, and abdominal injury requiring small bowel resection; arthritis; reported history of lupus; gastroesophageal reflux disease/irritable bowel syndrome; vertigo with vestibular dysfunction; brachial neuritis; trigeminal neuralgia; carpal tunnel syndrome; depressive disorder; anxiety disorder; personality disorder; and post-traumatic stress disorder. *See* Tr. 737. At step three, the ALJ found that none of Ms. Hart-Bevan's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 737–38. Because the ALJ

found that none of the impairments met a Listing, the ALJ assessed Ms. Hart-Bevan's RFC. *See*

Tr. 738–45. The ALJ found Ms. Hart-Bevan had the RFC to:

> lift and carry a maximum of 20 pounds occasionally. She could lift and carry a
> maximum of ten pounds frequently. She could stand and walk up to six hours out
> of an eight hour workday. She could sit for up to six hours out of an eight hour
> workday. She could occasionally climb ramps and stairs. She could never climb
> ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, and
> crouch. She could never crawl. She could frequently handle and finger. She could
> never be exposed to extremes of heat or to hazards such as unprotected heights or
> unguarded moving machinery. She could never be exposed to open flames. She
> could not operate a motor vehicle. She could perform simple, routine tasks. She
> could make simple decisions. She could only work in an environment that involved
> few, if any workplace changes. She could occasionally interact with supervisors,
> coworkers, and the public. The interaction with coworkers and the public could
> only be superficial, meaning that the interaction would not be necessary for the
> performance of job duties.

Tr. 738–39. At step four, the ALJ found that Ms. Hart-Bevan was unable to perform any past

relevant work. *See* Tr. 745. At step five, the ALJ found that considering Ms. Hart-Bevan's age,

education, work experience, and RFC, there were jobs that existed in significant numbers in the

national economy she could perform. *Id.* Relying on the VE's testimony, the ALJ determined that

Ms. Hart-Bevan could perform occupations such as merchandise marker, collator, and inspector

for handbag frames. *See* Tr. 746. Accordingly, the ALJ concluded Ms. Hart-Bevan was not

disabled within the meaning of the Act. *Id*.

      Ms. Hart-Bevan requested that the Appeals Council review the ALJ's unfavorable decision.

*See* Tr. 695, 1143. On December 16, 2020, the Appeals Council denied the request for review. *See*

Tr. 72–79. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v.*

*Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Hart-Bevan then filed her second

appeal to this Court. *See* Dkt. 1.

## III.    ANALYSIS

Ms. Hart-Bevan raises several arguments on appeal directed at the ALJ's consideration of various medical source opinions. First, she argues the ALJ erred in her analysis of state agency psychological consultant opinions, such that there is an internal inconsistency in the decision. *See* Dkt. 17 at 13–17. Second, Ms. Hart-Bevan contends the ALJ erred in her analysis of multiple opinions rendered by her treating neurologist, Dr. Easwar Sundaram, M.D. *See* Dkt. 17 at 21–34. The Court finds that remand is necessary because the ALJ failed to apply the proper legal standards in her evaluation of Dr. Sundaram's opinions, as discussed below.

### A.  Dr. Sundaram's Opinions

#### 1.  Treating Physician Rule

With respect to disability claims filed before March 27, 2017,[7] such as Ms. Hart-Bevan's claim, a treating physician's opinion on the nature and severity of a claimant's impairment should be accorded "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Brown v. Astrue*, 344 F. App'x 16, 20–21 (5th Cir. 2009). However, as the Fifth Circuit explained in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), a treating physician's opinion may be assigned less weight, little weight, or even no weight if good cause is shown. *Newton*, 209 F.3d at 455–56. Good cause to assign less than controlling weight to a treating physician's opinion exists where the opinion is "conclusory, is unsupported by medically

---

[7] The SSA has published a new rule that applies to claims filed on or after March 27, 2017, which eliminates the requirement that treating sources be given controlling weight. *See* 20 C.F.R. § 404.1520c. However, Ms. Hart-Bevan filed her initial DIB application before March 27, 2017, and, therefore, the treating physician rule applies. *See* POMS DI § 24503.050(D)(2) (directing ALJs to use the "earliest possible filing date of the claims" when one claim is open and another new claim is filed; if the earliest filing date of the claims is before March 27, 2017, the prior rules—including the treating physician rule—apply); *Witt v. Saul*, No. 1:19-cv-651, 2020 WL 7047734, at *1 (S.D. Ohio Dec. 1, 2020) ("Specifically, the POMS provides that in a situation where one claim is open when another claim is filed, the rules applicable to the earliest filing date are used.").

acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

If the ALJ does not assign a treating source's opinion controlling weight, the ALJ must assess the appropriate weight to assign the opinion based on the factors provided in 20 C.F.R. § 404.1527(c). These factors are: (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship, i.e., the length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors, including a medical source's amount of understanding of SSA "disability programs and their evidentiary requirements." *See* 20 C.F.R. § 404.1527(c).

*Newton* explains further that an ALJ need not consider the § 404.1527(c) factors where there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458 (citations omitted). In other words, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)(2) ]."[8] *Newton*, 209 F.3d at 453.

---

[8] The original text in *Newton* refers to the criteria set forth in 20 C.F.R. § 404.1527(d)(2), but this section was renumbered without substantive change to 20 C.F.R. § 404.1527(c)(2). *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012, to Mar. 26, 2017).

## 2. Dr. Sundaram's Multiple Opinions

Ms. Hart-Bevan began seeing neurologist Dr. Sundaram in January 2014, approximately five months after Ms. Hart-Bevan was involved in a serious motor vehicle accident. *See* Tr. 511. She was referred to Dr. Sundaram "due to having trouble with numbness and vertigo" following the accident. *Id.* Dr. Sundaram initially diagnosed Ms. Hart-Bevan with peripheral vertigo, vestibular neuoronitis, traumatic spondylopathy, and carpal tunnel syndrome. *See* Tr. 513. Dr. Sundaram ordered further testing, which included an MRI of the brain. *Id.* The MRI was taken on February 12, 2014, and showed "no evidence of acute ischemic or mass[,] essentially normal appearance of the brain parenchyma with the exception of mild cerebellar tonsillar ectopia without evidence of complication[,] normal appearance of the IAC's/skull base[,] no abnormal enhancement[,] [and] minimal paranasal sinus disease." *See* Tr. 516–17. All told, Dr. Sundaram saw Ms. Hart-Bevan at least eight more times during the time period at issue. *See* Tr. 656–72. In addition to treating Ms. Hart-Bevan's complaints of physical impairments due to the accident, Dr. Sundaram also treated Ms. Hart-Bevan's symptoms of depression. *See, e.g.*, Tr. 666. Eighteen months after he first began treating Ms. Hart-Bevan, Dr. Sundaram's treatment records indicated that Ms. Hart-Bevan still continued to suffer from "chronic vestibular dysfunction with persistent vertigo which is worse with movement" and further, that despite "normal MRI Brain and IAC findings[,]" Ms. Hart-Bevan's condition could "take a long time to improve." *See* Tr. 665–66 (September 2015 office visit). Throughout the course of treatment, Dr. Sundaram issued the following statements concerning Ms. Hart-Bevan's impairments, which are set forth below:

a. <u>December 2014 Letter</u> (Tr. 688): About a year after he began treating Ms. Hart-Bevan, Dr. Sundaram issued a "To Whom It May Concern" letter stating:

> I am the treating neurologist for [Ms. Hart-Bevan]. I have been treating her for her neurological medical conditions. I have advised her not to be working at this time.

She will not be able to return to work until further notice. Since I have advised her that she can't work, then she can't go out looking for a job.

b. June 2015 Letter (Tr. 546, 548): In this "To Whom It May Concern" letter, Dr. Sundaram

opined that Ms. Hart-Bevan was "completely and totally disabled" because:

. . . [Ms. Hart-Bevan] has always complained of continuous and significant vertigo after the accident, which is where I came into the situation. [She] has had MRI of the brain as well as internal auditory canal. There was no acute mass or any stroke involved[.] There was mild cerebellar tonsillar ectopia, which is usually a normal variant. Otherwise, no other acute changes were noted. [She] most likely, based on my neurological evaluation, has suffered significant injury to the vestibular apparatus because of the severe facial injury. She has been on multiple treatments but unfortunately continues to have chronic vertigo. This vertigo is usually with movement but even to some extent at rest. Multiple medications, rest has helped her minimally. Initially, I treated her with meclizine but later because of the persistent and severe vertigo she has been treated with Valium which has helped her to some extent but not completely. [Ms. Hart-Bevan] has been diagnosed as having posttraumatic chronic vestibular dysfunction. Unfortunately, this type of injury is a long term injury and the fact that this patient has persistent problems, almost two years after the accident, tells me that this is going to be chronic and persistent.

[Ms. Hart-Bevan's] current symptoms include chronic vertigo, which is worse with movement but even at rest[.] She is unable to really move fast. She is unable to drive for long distances because the movement of the car makes the vertigo worse. She is not able to a do a lot of activities of daily life including bending and turning and so on which makes her vertigo worse. As noted earlier, I expect these to be long-term sequalae from her motor vehicle accident and vestibular injury. This type of injury is well noted in patients who has various facial injury and subsequent vestibular apparatus damage.

[Ms. Hart-Bevan] is totally and completely disabled because of this. There is no question in my mind that [Ms. Hart-Bevan] is unable to function on a regular basis. She is unable to work anywhere else because of this vertigo[.] Accommodations for her deficits is really not possible since it is a chronic problem on a daily basis and does not matter whether she sits, stands, walks, moves, everything causes the vertigo to get worse[.]

[Ms. Hart-Bevan] needs constant medications on a long-term basis to keep these symptoms under control.

In concluding, [Ms. Hart-Bevan] has injuries and sequelae from her previous motor vehicle accident, which has made her completely and totally disabled; especially the chronic vestibular dysfunction and vertigo.

c. <u>March 2018 Letter</u> (Tr. 1470): In this "To Whom It May Concern" letter, Dr. Sundaram indicated that Ms. Hart-Bevan continued to suffer from "neurological issues which have resulted from a traumatic brain injury." He opined:

> Ms. Bevan meets the disability requirements as she is limited to work due to her cognitive difficulties as well as the mood disorder and depression. Ms. Bevan's [sic] has not shown any improvement and her health continues to decline. She is not able to do proper testing and treatment as she has no health insurance. Without insurance it is difficult to treat her.

d. <u>October 2018 Letter</u> (Tr. 1543): In this "To Whom It May Concern" letter, Dr. Sundaram indicated that Ms. Hart-Bevan had "post traumatic vertigo with vestibular dysfunction, cognitive difficulties, depression, bipolar disorder, PTSD, and chronic pain with physical limitations due to the injuries she received." He opined:

> Ms. Bevan was trained to be a dental hygienist but due to the vertigo, physical limitation and her pain, she is not able to be gainfully employed. Ms. Bevan cannot handle the dental hygiene instruments as they vibrate, causing her to lose control of her hands, causing increased pain in her hands and arms.

> It is my medical opinion that due to the traumatic brain injury and the resulting neurological issues that Ms. Bevan is totally and permanently disabled from doing her previous work and any type of gainful employment.

e. <u>November 2018 Interrogatories</u> (Tr. 1545–50): Finally, Dr. Sundaram answered interrogatories prepared by Ms. Hart-Bevan's attorney. Therein, Dr. Sundaram opined:

- Ms. Hart-Bevan's condition had worsened over time;

- Ms. Hart-Bevan needed to rest on average more than five hours of an eight-hour workday due to her medical conditions;

- Ms. Hart-Bevan could rarely handle and finger, and could rarely use her hands together in a coordinated manner to perform tasks; and

- Ms. Hart-Bevan could rarely reach in front, overhead, or to the side with either arm.

### 3.  The ALJ's Evaluation of Dr. Sundaram's Multiple Opinions

The ALJ devoted a single paragraph in her written decision to Dr. Sundaram's opinions.

*See* Tr. 743. The ALJ began by summarizing the opinions as follows:

> In a letter dated December 10, 2014, Dr. Easwar Sundaram, MD, opined that [Ms. Hart-Bevan] was unable to return to work until further notice. In a letter dated June 4, 2015, he opined that [Ms. Hart-Bevan] was totally and completely disabled, unable to function on a regular basis, and unable to work anywhere. In a letter dated March 30, 2018, he opined that she met "the disability requirements as she is limited to work due to her cognitive difficulties as well as the mood disorder and depression." In a letter dated October 4, 2018, he opined that she was totally and permanently disabled from doing her previous work and any type of gainful employment. In answers to interrogatories dated November 30, 2018, he opined that her condition had worsened, that she needed to rest more than five hours per day, and could rarely use her upper extremities.

*See id.* After the above summary, the ALJ determined:

> These [above] opinions are given little weight. They are inconsistent with Dr. Sundaram's longitudinal record of examinations or other clinical testing, which are largely benign. They are not consistent with the treatment history, which is minimal and conservative. Further, the opinions state limitations that are not defined in functional terms. Finally, the opinions make determinations that are reserve[d] to the Commissioner.

*Id.*

### 4.  The ALJ failed to apply the proper legal standards in her consideration of Dr. Sundaram's opinions

As Dr. Sundaram was Ms. Hart-Bevan's treating neurologist, his opinions were entitled to controlling weight if well-supported and not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2). As described above, the ALJ did not accord the opinions controlling weight, but instead gave them little weight. The ALJ gave several reasons why she was not according the opinions controlling weight—namely that the opinions were inconsistent with examination and testing results as well as a minimal, conservative treatment history; the opinions stated limitations in non-functional terms; and the opinions made determinations that were

reserved to the Commissioner. *See* Tr. 743; *see also Newton*, 209 F.3d at 456 (indicating that good cause to assign less than controlling weight to a treating physician's opinion exists where the opinion is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence"). On appeal, Ms. Hart-Bevan first challenges these reasons as being inadequate to show "good cause" for not assigning controlling weight to Dr. Sundaram's opinions. *See* Dkt. 17 at 20–25. Ms. Hart-Bevan also argues that the ALJ should have, but failed to, analyze the factors set forth in 20 C.F.R. § 404.1527(c). *See id.* at 26–30.

At the outset, Ms. Hart-Bevan's briefing appears to treat all of the letters and interrogatories from Dr. Sundaram as medical opinions. However, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "These determinations are legal conclusions that the regulations describe as 'reserved to the Commissioner.'" *Id.* Thus, Dr. Sundaram's opinions that Ms. Hart-Bevan could not work or that she was "totally and completely disabled" were not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d); *see also Frank*, 326 F.3d at 620 (treating source's opinion that claimant could not work "was not a medical opinion within the meaning of the regulation" and thus, not entitled to any special significance). The ALJ did not err in finding that those portions of Dr. Sundaram's opinions were not entitled to controlling weight.

As to Dr. Sundaram's remaining opinions, the Court need not decide whether the ALJ's 'good cause' reasons for not assigning them controlling weight fail to pass muster, as Ms. Hart-

Bevan contends, because even if the Court were to find no error in that respect, such a finding would only clear the first step in analyzing a treating source opinion. That is, once the ALJ finds that a medical opinion of a treating source is not entitled to controlling weight, the ALJ must conduct the analysis required by 20 C.F.R. § 404.1527(c) unless there is reliable medical evidence from a treating or examining physician controverting the opinions of the treating source. *See Newton*, 209 F.3d at 453.

Here, it is plainly evident from the ALJ's decision that the ALJ failed to analyze Dr. Sundaram's opinions under the factors set forth in 20 C.F.R § 404.1527(c). Indeed, the Commissioner concedes that the ALJ "did not lay out and discuss the factors listed in 20 C.F.R. § 404.1527(c)." *See* Dkt. 19 at 8. The Commissioner nonetheless argues that the ALJ was not required to discuss the factors because there was a controverting examining physician's opinion, that of consultative examiner Dr. Mohamed Shabana, M.D. *See id.* at 9. This argument lacks merit. As an initial matter, at no point did the ALJ indicate in her written decision that Dr. Sundaram's opinions were controverted by Dr. Shabana's one-time consultative examination. Rather, the ALJ's discussion of Dr. Shabana's opinion occurred entirely separate from the discussion of Dr. Sundaram's opinions, with no direct comparison drawn between the two medical sources. But even assuming that the ALJ was not required to draw a direct comparison, the ALJ only assigned "some weight" to Dr. Shabana's opinion, *see* Tr. 744, without discussing what she meant by "some weight." That is, the ALJ did not explain which limitations in Dr. Shabana's opinion she was adopting, which limitations she was rejecting, and the reasons why.

Moreover, the ultimate RFC assessed by the ALJ varied considerably from the limitations assessed by Dr. Shabana. For example, Dr. Shabana opined that Ms. Hart-Bevan could sit, stand, and walk normally in an eight hour workday, but the ALJ assessed an RFC that Ms. Hart-Bevan

could sit, stand, and walk for six out of eight hours. *See* Tr. 738–39, 744. Likewise, Dr. Shabana opined that Ms. Hart-Bevan had no limitations on bending, stooping, crouching, or squatting, but the ALJ assessed an RFC that Ms. Hart-Bevan could only occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch, and could never crawl. *Id.* And while Dr. Shabana opined that Ms. Hart-Bevan had no visual, communicative or environmental limitations, the ALJ assessed an RFC that Ms. Hart-Bevan could never be exposed to extreme heat or hazards such as unprotected heights or unguarded moving machinery, and that she could not operate a motor vehicle. *Id.* Because the ALJ did not offer an explanation of how she incorporated Dr. Shabana's opinion into the RFC and because the ALJ clearly did not adopt the limitations assessed by Dr. Shabana, the Court cannot say the opinion constitutes "reliable medical evidence" that the ALJ found "as a factual matter . . . was more well-founded" than Dr. Sundaram's opinions. *See Newton*, 209 F.3d at 458 ("This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."). Further undercutting the reliability of Dr. Shabana's opinion is his hearing testimony that he conducted a one-time examination of Ms. Hart-Bevan, did not review her medical records, and was unaware she had a treating neurologist. *See* Tr. 790–792; *see also* Tr. 1477 (Dr. Shabana's statement in his opinion that there were "no medical records available for review"). Significantly, Dr. Shabana also admitted his opinions may have changed had he been aware of Dr. Sundaram's opinions at the time he conducted the consultative examination. *See* Tr. 794.

Finally, Dr. Shabana's opinion does not controvert Dr. Sundaram's opinions regarding the limiting effects of Ms. Hart-Bevan's vertigo. Although Dr. Shabana noted that Ms. Hart-Bevan alleged disability due to vertigo, among other conditions, he did not specify whether there were any limiting effects from this impairment—noting only that Ms. Hart-Bevan "did not experience

any dizziness during the [consultative] exam." *See* Tr. 1477. The fact that Ms. Hart-Bevan did not experience any vertigo during the exam itself does not bear on whether there were any limiting effects from this impairment. Thus, Dr. Shabana's opinion does not offer any firsthand evidence controverting Dr. Sundaram's opinions concerning the limiting effects of Ms. Hart-Bevan's vertigo. In sum, for all of the reasons set forth above, the Court finds that the ALJ's consideration of Dr. Shabana's opinion did not relieve the ALJ of her obligation to analyze Dr. Sundaram's opinions under the factors set forth in 20 C.F.R § 404.1527(c).

Turning to the § 404.1527(c) factors themselves, as the Commissioner acknowledges, the ALJ did not lay out and analyze these factors when she weighed Dr. Sundaram's opinions. More specifically, the ALJ did not discuss any of the § 404.1527(c) factors that pertained to the treating relationship—i.e., the length of the treatment relationship, the frequency of examination, the extent of the treatment relationship, or Dr. Sundaram's specialization. *See* 20 C.F.R. § 404.1527(c)(2)(i)–(ii). And although the ALJ mentioned the "longitudinal record of examinations or other clinical testing" and the "treatment history" when she discussed Dr. Sundaram's opinions, she did not actually specify to what record evidence she was referring. Nor did she discuss the medical evidence from Dr. Sundaram in terms of the supportability or consistency factors laid out in § 404.1527(c). Accordingly, the Court finds that the ALJ committed legal error in her analysis of Dr. Sundaram's opinions. *See Ramirez v. Berryhill*, No. 3:17-cv-336, 2018 WL 2651389, at *9 (S.D. Tex. July 17, 2018) ("[N]othing in the ALJ's discussion indicates that he undertook his obligation to fully consider each of the [Section 404.1527(c)] factors. This Court is not inclined to scour the ALJ's decision to try to cobble together a cogent six-factor analysis when it is not clear on the face of the decision.").

16

Because the Court finds remand is warranted on this issue, the Court does not reach Ms. Hart-Bevan's remaining claims of error, which may be affected by the ALJ's treatment of this case on remand.

## B. Ms. Hart-Bevan's Request for an Immediate Award of Benefits

As a final matter, Ms. Hart-Bevan urges the Court to remand with an instruction to immediately award benefits. *See* Dkt. 23 at 9–10. If an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-cv-045, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009). The claimant must carry "the very high burden of establishing disability without any doubt." *Id.* at *11 (cleaned up). The Commissioner, not the Court, resolves evidentiary conflicts. *Newton*, 209 F.3d at 452. Inconsistencies and unresolved issues in the record therefore preclude an immediate award of benefits. *See Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005).

The Court finds that Ms. Hart-Bevan has not met the "very high burden of establishing disability without any doubt." *Armstrong*, 2009 WL 3029772, at *11 (cleaned up); *R.E.A. v. Berryhill*, No. 17-cv-0968, 2019 WL 1197689, at *6 (W.D. La. Feb. 26, 2019) ), *R. & R. adopted*, 2019 WL 1179416 (W.D. La. Mar. 13, 2019) ("An immediate award is appropriate only in rare circumstances where the claimant shows definitively that he is entitled to benefits."). On remand, the ALJ will need to properly weigh the evidence, including in particular Dr. Sundaram's opinions. This weighing of the evidence may affect the ALJ's assessment of Ms. Hart-Bevan's RFC and the hypothetical(s) posed to any vocational expert at steps four and five. Accordingly, because additional fact-finding and analysis is necessary on remand, the Court recommends

denying Ms. Hart-Bevan's request for an immediate award of benefits. However, based on the length of time that has transpired since Ms. Hart-Bevan first applied for benefits, and because this is the second time her case is being remanded, the Court instructs the Commissioner to expedite consideration of Ms. Hart-Bevan's claim on remand.

## IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 9th day of September, 2022.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE